IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION,<br><br>Plaintiff,<br><br>vs.<br><br>HO`OLEHUA HOUSING, LP,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civ. No. 12-00478 BMK<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Plaintiff U.S. Bank National Association's Motion for Summary Judgment (Doc. 33). The Court heard this Motion on June 28, 2013. After careful consideration of the Motion, the supporting and opposing memoranda, and the arguments of counsel, the Court GRANTS Plaintiff's Motion.

BACKGROUND

Plaintiff and Defendant Ho`olehua Housing, LP entered into various agreements to fund Defendant's construction of the Lokahi Ka`u housing development in Kona, Hawaii ("the Project"). Pursuant to the November 1, 2008 Trust Indenture, Hawaii Housing Finance and Development Corporation ("HHFDC") agreed to issue bonds in the principal amount of $33,500,000 to provide for the financing of the housing project. (Ex. 1.) Pursuant to the

November 1, 2008 Financing Agreement, HHFDC agreed to use the proceeds of the sale of the bonds to make the Bond Mortgage Loan to Defendant, the proceeds of which would "finance the acquisition, construction and equipping of the Project." (Ex. 2.)

Plaintiff was designated as the trustee in connection with the issuance of the bonds. (Ex. 1.) In exchange for its agreement to serve as trustee, Defendant agreed that it would pay all of Plaintiff's attorneys' fees and costs incurred in connection with any claim related to the Trust Indenture or the Project. This agreement was memorialized in both the Trust Indenture and the Financing Agreement. The Trust Indenture provides:

> [Defendant] shall indemnify and hold harmless [Plaintiff] and its officers, directors, officials, employees, agents, receivers, attorneys, accountants, advisors, consultants and servants, past, present or future, from and against (a) any and all claims by or on behalf of any person arising from any cause whatsoever in connection with this Indenture or transactions contemplated thereby, the Project, or the issuance, offering, sale or remarketing of the Bonds; (b) any and all claims arising from any act or omission of [Defendant] or any of its agents, contractors, servants, employees or licensees in connection with the Project, or the issuance, offering, sale or remarketing of the Bonds; and (c) all costs, counsel fees, expenses or liabilities incurred in connection with ay such claim or proceeding brought thereon; except that [Defendant] shall not be required to indemnify any person for damages caused by the willful misconduct or unlawful acts of such person.

Trust Indenture § 7.06. Similarly, the Financing Agreement provides:

> [Defendant] shall indemnify and hold harmless [Plaintiff] and their respective officers, directors, officials, employees, agents, attorneys, accountants, advisors, consultants and servants, past, present or future, from and against (a) any and all claims by or on behalf of any person arising from any cause whatsoever in connection with the Bond Mortgage Loan, any of the Bond Financing Documents, the Project, the Remarketing Agreement or the issuance, offering, sale or remarketing of the Bonds; (b) any and all claims arising from any act or omission of [Defendant] or any of its agents, contractors, servants, employees or licensees in connection with the Bond Mortgage Loan, any of the Bond Financing Documents, the Project, the Remarketing Agreement or the issuance, offering, sale or remarketing of the Bonds; and (c) all costs, counsel fees, expenses or liabilities incurred in connection with any such claim or proceedings brought thereon; except that [Defendant] shall not be required to indemnify any person for damages caused by the willful misconduct, gross negligence or unlawful acts of such person.

Financing Agreement § 6.1.

In 2010 and 2011, numerous lawsuits relating to the Project were brought against Plaintiff and Defendant by contractors and subcontractors. (Exs. 13-21; Decl'n of Makani Maeva ¶ 6.) Defendant ultimately settled the claims by agreeing to make payments to contractors and subcontractors and agreeing to pay all of Plaintiff's fees and costs that were already incurred or would later be incurred in connection with the lawsuits. This was documented in the

Settlement, Release, and Indemnification Agreement ("Settlement Agreement"), which provides:

> [Defendant] shall pay all costs of suit and attorneys' fees incurred by [Plaintiff] in connection with (1) any and all claims by or on behalf of any person arising from any cause whatsoever in connection with the [Trust Indenture] between [Plaintiff] and [HHFDC] relating to $33,500,000 [bonds] or transactions contemplated thereby, the Project (as defined in the Indenture), or the issuance, offering, sale or remarketing of the Bonds; (b) any and all claims arising from any act or omission of [Defendant] or any of its agents, contractors, servants, employees or licensees in connection with the Project (as defined in the Indenture), or the issuance, offering, sale or remarketing of the Bonds; and (c) all costs, counsel fees, expenses or liabilities incurred in connection with any such claim or proceeding brought thereon. [Plaintiff's expenses] include, but are not limited to, all costs and attorneys' fees incurred and/or to be incurred by [Plaintiff] in connection with [13 specific lawsuits].

Settlement Agreement § 5(k).

The Settlement Agreement also imposed deadlines by which Defendant agreed to pay Plaintiff's fees and costs:

> [Defendant] shall make such payment with respect to all [expenses] incurred to date within fifteen (15) days of executing this Agreement, and shall pay any future US Bank Expenses within thirty (30) days of US Bank's written request for such reimbursement.

Id.

Plaintiff did not receive a fully-executed copy of the Settlement Agreement until September 15, 2011. (Zrust Decl'n ¶ 23; Oshiro Decl'n ¶¶ 6-7; Ex. 22.) By that time, Plaintiff had provided Defendant invoices reflecting $172,626.94 in attorneys' fees and costs that it had incurred in connection with the lawsuits. (Zrust Decl'n ¶¶ 15, 24; Ex. 9.) Between September 15, 2011 and December 31, 2011, Plaintiff sent Defendant additional invoices reflecting $19,554.12 in fees and costs. (Zrust Decl'n ¶¶ 15, 25, Ex. 10.) On March 19, 2012, Plaintiff sent another invoice reflecting an additional $226.00 in fees and costs. (Zrust Decl'n ¶¶ 15, 26; Ex. 11.)

Defendant has not paid any of Plaintiff's fees and costs incurred in the underlying lawsuits. Consequently, Plaintiff brought this action, asserting Defendant breached the Settlement Agreement by refusing to pay the $192,407.06 in fees and costs that Plaintiff incurred.

## STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact, and that the undisputed facts warrant judgment for the moving party as a matter of law. See Fed. R. Civ. P. 56(c). In assessing whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving

party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 2000).

In deciding a motion for summary judgment, the court's function is not to try issues of fact, but rather, it is only to determine whether there are issues to be tried. Anderson, 477 U.S. at 249. If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

DISCUSSION

Plaintiff asserts that Defendant breached the Settlement Agreement by failing to pay attorneys' fees and costs incurred by Plaintiff in connection with the underlying lawsuits.

The Settlement Agreement explicitly states that it "shall be subject to, governed by, construed, and enforced pursuant to the laws of the State of Hawai`i, without regard to any choice of law principles." Settlement Agreement § 9(f). "Under Hawaii law, when the parties choose the law of a particular state to govern their contractual relationship and the chosen law has some nexus with the parties or the contract, that law will generally be applied." Hawaiian Tel. Co. v. Microform

Data Sys., Inc., 829 F2d 919, 922 (9th Cir. 1987) (internal brackets and quotations omitted). There is a sufficient nexus between the chosen law and both the Settlement Agreement and the parties, and the Court therefore applies Hawaii law in construing the Settlement Agreement.

"It is fundamental that terms of a contract should be interpreted according to their plain, ordinary and accepted use in common speech, unless the contract indicates a different meaning." Brown v. KFC Nat'l Mgmt. Co., 921 P.2d 146, 160 (Haw. 1996) (quotations and brackets omitted). "Correlatively, in construing a contract, a court's principal objective is to ascertain and effectuate the intention of the parties as manifested by the contract in its entirety." Id. (brackets omitted). "It is the function of courts to construe and enforce contracts made by the parties, not to make or alter them." Strouss v. Simmons, 657 P.2d 1004, 1010 (Haw. 1982). "[W]hen the terms of a contract are definite and unambiguous there is no room for interpretation." Wong v. Cayetano, 143 P.3d 1, 20 (Haw. 2006). Importantly, "[t]he parties' disagreement as to the meaning of a contract or its terms does not render clear language ambiguous." Stanford Carr Dev. Corp. v. Unity House, Inc., 141 P.3d 459, 471 (Haw. 2006).

The language at issue in the Settlement Agreement is clear that Defendant contractually agreed to "pay all costs of suit and attorneys' fees incurred

by [Plaintiff] in connection with . . . any and all claims" arising from any cause relating to the Trust Indenture or the Project, including thirteen specific lawsuits. Settlement Agreement § 5(k). Payment of Plaintiff's fees and costs were due "within fifteen (15) days of executing this Agreement" and expenses incurred after execution of the Settlement Agreement were due "within thirty (30) days of [Plaintiff's] written request for such reimbursement." Id.

To prevail on its breach of contract claim, Plaintiff "must establish that a contract exists, and that [Defendant] failed to preform as required by the contract." Wyndham Vacation Resorts, Inc. v. Architects Haw. Ltd., 703 F. Supp. 2d 1051, 1062 (D. Haw. 2010). Here, the Settlement Agreement is a contract executed by Plaintiff and Defendant. Exotics Hawaii-Kona, Inc. v. E.I. du Pont de Nemours & Co., 172 P.3d 1021, 1032 (Haw. 2007) ("settlement agreements . . . are simply a species of contract"). In the Settlement Agreement, Defendant agreed to pay "all costs of suit and attorneys' fees incurred by [Plaintiff]" in actions related to the Project. Settlement Agreement § 5(k). Plaintiff requested reimbursement of fees and costs incurred in such actions more than a year ago, but Defendant has refused to make any payments pursuant to the Settlement Agreement. Plaintiff therefore establishes that Defendant breached the contractual terms of the Settlement Agreement.

Defendant argues that it agreed only to pay "reasonable" fees and costs and that Plaintiff has not shown that the $192,407.06 it incurred is reasonable. However, the language of the Settlement Agreement is clear that Defendant agreed to pay "all" costs of suit and attorneys' fees incurred by Plaintiff. This Court must interpret the word "all" according to its "plain, ordinary and accepted use in common speech, unless the contract indicates a different meaning." Brown, 921 P.2d at 160 (Haw. 1996). As other courts have noted, "'all' unambiguously 'means all.'" City of Spokane, Wash. v. Fed. Nat'l Mortgage Ass'n, CV-13-0020-LRS, 2013 WL 3288413, at *2 (E.D. Wash June 28, 2013) ("The ordinary meaning of 'all' is 'the whole of,' 'every, all kinds, all sorts,' and 'any whatever.'"); see also Knott v. McDonald's Corp, 147 F.3d 1065, 1067 (9th Cir. 1998) ("'[A]ll' means all.").

In light of the unambiguous term "all", this Court "must determine the intention of the parties 'solely from the plain language of the contract' and may not consider extrinsic evidence outside the 'four corners' of the document itself." Knott, 147 F.3d at 1068. In other words, the Court may not refer to the parties' subjective understanding of the term "all." McKnight v. Torres, 563 F.3d 890, 893 (9th Cir. 2009) (where the language of a contract is clear, "the parties' 'uncommunicated subjective intent is irrelevant"). Therefore, the Court declines to

entertain Defendant's subjective understanding that only "reasonable" fees and costs would be reimbursed and rejects Defendant's argument that this Court should "imply a term of 'reasonableness' into the [Settlement Agreement] language." (Opp. at 14; Maeva Decl'n ¶ 4.) Moreover, the fees and costs at issue are the measure of Plaintiff's compensatory damages for the breach, not the result of a fee-shifting award to a prevailing party, which must be reasonable.

Defendant also argues that Plaintiff has not proven its damages with reasonable certainty. Indeed, "damages must be based on evidence that shows loss with reasonable certainty and eliminates speculation." Exotics Hawaii-Kona, Inc., 172 P.3d at 1047. Here, Plaintiff provided invoices reflecting attorneys' fees and costs incurred in connection with lawsuits relating to the Project and the Trust Indenture. (Exs. 9-11.) None of Plaintiff's invoices is based on "mere speculation or guess." Exotics Hawaii-Kona, Inc., 172 P.3d at 1047 (citing Chung v. Kaonohi Ctr. Co., 618 P.2d 283, 291 (Haw. 1980).

Lastly, Defendant contends that Plaintiff failed to satisfy its duty to mitigate its damages. "In contract or in tort, the plaintiff has a duty to make every reasonable effort to mitigate his damages." Malani v. Clapp, 542 P.2d 1265, 1271 (Haw. 1975). "The burden, however, is upon the defendant to prove that

mitigation is possible, and that the injured party has failed to take reasonable steps to mitigate his damages." Id.

In this case, Plaintiff could not have mitigated the damages that accrued prior to the execution of the Settlement Agreement. Defendant admits that ninety percent ($172,626.94) of Plaintiff's fees and costs were made known to Defendant prior to the execution of the Settlement Agreement. (Ex. 23.) However, the Settlement Agreement could not have been breached until it was executed and, by that time, Plaintiff was unable to mitigate those fees and costs that were incurred and made known to Defendant prior to execution of the Settlement Agreement. With respect to the fees and costs that were incurred after the Settlement Agreement was executed ($19,780.12), which comprise ten percent of Plaintiff's damages, the Court finds that those fees are reasonable.

In sum, the Settlement Agreement is clear and unambiguous that Defendant agreed to pay "all" fees and costs incurred by Plaintiff in lawsuits relating to the Trust Indenture and Project. Defendant breached that Agreement by failing to pay Plaintiff's incurred fees and costs, and the Court finds that Plaintiff prevails on its claim for breach of contract. Plaintiff's measurement of compensatory damages is the amount of fees and costs Defendant should have paid

pursuant to the Settlement Agreement, a total of $192,407.06. Therefore, the Court grants summary judgment in favor of Plaintiff.[1]

## CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Summary Judgment (Doc. 33). Plaintiff is awarded $192,407.06 in damages. The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff and to close this case.

DATED: Honolulu, Hawaii, July 30, 2013.

IT IS SO ORDERED.




/s/ Barry M. Kurren
United States Magistrate Judge
Dated: July 30, 2013

[1] The Court declines Defendant's request for a Rule 56(d) continuance of this Motion. (Opp. 19-21.)